King, J.
dissenting:
I am unable' to concur with the views expressed by the majority of the members of this court in their opinion herein, or with their conclusions, which seem to me to sacrifice justice to a technicality, and in which a strict construction of, and compliance with the terms of the statute are needlessly enforced, to the end that a fraud is permitted and perpetuated which may and should be avoided by the proper ap *556 plication of the principles of equity, which appear to have been recognized and applied by the trial court.
I accept the statement made in the opinion of the court that the controlling question for our determination is whether the probate or district court had jurisdiction to order the sale of the real estate to pay the debts of the estate and the expenses of administration, supplementing that statement, however, by saying that such question is the only ultimate question for our consideration and determination, all other matters being incidental or collateral to the main subject.
It is conceded that at the time the petition to sell was filed, presented and granted, there were not sufficient funds in the hands or under the control of the administrator to pay such debts and expenses, nor personal property from which the necessary funds could be secured; but, it is contended that sufficient funds had been paid to the administrator', and that he had improperly and prematurely distributed such funds to certain of the heirs, and for that reason the court was without authority or jurisdiction to order a sale of the real estate to satisfy the remaining unpaid debts and costs of administration.
The right and power to sell real estate in course of administration is statutory, and the provisions of the statute must be substantially complied with. Section 7168 Rev. Stat. 1908, gives the power to the county court to order sale of real estate “whenever, after the inventory and appraisement of the personal estate, * * * it shall appear that the personal estate, income and annual rents, issues and profits *557 of the real estate of any decedent * * * is insufficient to discharge the just debts allowed against his estate, * * * expenses of administration, and all other sums required by law to be paid out of such -estate.” Section 7170 requires the administrator to present to the county court his .petition “setting forth the condition of the estate, the amount of legacies, debts and claims against such estate, so far as the same are known, and particularly describing the whole of the real estate of such estate, and the nature of the title of the decedent, * * * the value of the several parcels of said real estate, and the encumbrances thereon, if any, the facts and circumstances upon which the petition is founded, and the purpose for which sale is deemed necessary or proper”, and also requires such petition to set forth the names and residences of the heirs at law, legatees and devisees of the testator or intestate, and that the petition shall be verified by the oath of the administrator. The sections following provide for order to show cause and service thereof. Section 7178 provides that if the county court is satisfied, after a full hearing upon said petition, that proper and legal grounds exist for the sale of the whole or any portion of the real estate of such decedent, the county court shall make an order directing the sale, and the manner in and the conditions upon which the sale shall be made.
A careful examination of the petition filed by the administrator in the case at bar shows that every one of these jurisdictional requirements was not only substantially but technically complied with, and thereby jurisdiction to try, and upon hearing make the order for such sale, if found that proper and *558 legal grounds exist therefor, was unquestionably vested in the county court.
In addition to the matters required to be set forth in the petition, and which were set forth as we have stated, the petition contained a complete statement of the matters pertaining to the estates of Amy Kessee and of Daniel Kessee, mentioned in the opinion of the court, including the receipt of $9400 by the administrator, his application for authority to distribute the same and the order of the court directing distribution thereof, and the actual distribution to the heirs of Amy Kessee in the presence of the judge of said court, the executor of the will of Daniel Kessee and the attorney at law and in fact of Randolph, the appellant herein. And as some of these allegations have been omitted from the majority opinion, evidently treated as “unimportant”, but which seem to me to be of vital importance, reference will be made thereto. These allegations were that the estate of Amy Kessee, of which Prowers was administrator de bonis, and the estate of Daniel Kessee, of which O. G-. Hess was executor, had been in course of administration in the same court, Daniel Kessee, husband of said Amy, having been administrator of his wife’s estate prior to the time of his death; that upon the death of the said Daniel and the appointment of Prowers to succeed him as administrator, (Prowers being the son and one of the heirs of Amy) he filed in said court against the estate of Daniel Kessee a claim of $46,000, besides interest, in favor of the estate of his mother; that Mary E. Randolph, appellant herein, and sister of said Daniel Kessee, was sole devisee of the will and owner of the estate of Daniel Kessee, *559 and as such devisee, the owner of one-half of the estate of Amy Kessee, subject to the payment of the debts and costs of administration of the last named estate; that negotiations were had between the said administrator and the executor and Randolph, by which, the executor with the consent of Randolph, offered to pay to the administrator the sum of $9400 in settlement of said claim, to which amount the said Randolph agreed to relinquish all right, interest and claim, and that said sum might be distributed by the said Prowers to the children of Amy Kessee by her first husband. This offer was accepted by the administrator, and petitions were filed simultaneously by the administrator and by the executor in their respective estates, reciting the negotiations and praying approval thereof. At the hearing of the petition of the administrator, Hess, the executor of the will of Daniel Kessee and attorney in fact for Randolph, was present. That petition recited, among other things, that on said claim the estate of Amy Kessee would be justly entitled to at least $18,800 from the estate of Daniel, one-half of which would pass to Randolph and the other half to the children of Amy, and was the basis for the compromise by the payment of $9400 to the children of Amy, heirs of one-half of the estate, and contained this allegation: “Tour petitioner further represents that there are sufficient lands belonging to the estate of the said Amy Kessee, deceased, out of which to pay all just claims that may be allowed against the said estate of said Amy Kessee, deceased.” This quotation will show that at the time this petition was heard, Randolph, who was present through her attorney in fact, knew that the lands *560 of the Amy Kessee estate were, if necessary, to be subjected to the payment of the debts and claims against that estate. . This allegation was followed by a prayer for an order authorizing him “to pay out the said sum of $9400 to the said children of Amy Kessee, share and share alike.” The petition was granted and the order made which recited that said Randolph consented to said distribution; and the administrator, at that time, in the presence of the judge and of the executor and attorney in fact for Randolph, drew his checks and distributed the said $9400 to such heirs, share and share alike, to which no protest was made.
The orders of the court permitting such distribution were made on-the 16th day of May, 1907. The petition for sale of the real estate was filed August 24th, 1907, and heard and granted on the 8 th day of February, 1908, after due notice to all interested parties. To said petition appellant herein filed answer which did not deny any of the allegations of the petition. It demurred to the sufficiency of the petition, and alleged that the estate at that time and at-the time of the filing of the petition had ample personal assets to pay all debts and expenses without resort to real estate, and alleged the payment by said executor to said administrator of the sum of $9400 already alleged and set forth in the petition. The allegation that the administrator had funds or personal assets at the times named had no support whatever in the testimony, as it was alleged and not denied, and fully established by the evidence, that the said $9400 had been distributed, and that there were no other personal assets except about $200 derived from rentals which had already been *561 exhausted in the payment of other debts. So that the only question to be determined by the court was whether, under the facts as stated in the petition, the administrator must be charged as still having in' his possession the said sum of $9400, or a sufficient portion thereof to pay the debts and costs of administration of the estate. Upon this question the county court, after finding the existence of unpaid debts and expenses, made this finding:
“The court finds as a fact that the $9400 mentioned in the petition herein, and evidence offered, was not to be applied to the payment of any claims or indebtedness or expenses of administration, and that the respondent, Mary E. Randolph; so agreed, and that she is now estopped from setting up any demand that the. said $9400, or any part thereof, be applied to the payment of the indebtedness aforesaid.”
and thereupon ordered the sale of the real estate, from which order Randolph appealed to the district court. The evidence in the district court, in addition to the petitions and orders of the county court and the. receipts filed therein, contained documentary evidence from the county court showing the inventory filed by Daniel Kessee as administrator of the estate of his deceased wife, Amy, in which the real estate herein asked to be sold was the only asset reported as belonging to said estate, omitting any reference to his indebtedness of $46,000 thereafter made as a claim against his estate; also showing the report and inventory of Prowers, administrator de bonis. Oral testimony was also introduced, which was to some extent conflicting, and the trial court apparently discredited some of the statements of *562 Hess, but in that respect this court is bound by the finding of the trial court, even as to matters which were not directly disputed. The court had the right to believe all or none of his testimony.
There can be no question that real estate of a decedent cannot be ordered sold to pay debts and expenses of administration unless there be an insufficiency of personal assets at the time the petition for sale is presented and heard; nor, that upon petition of the administrator the order will be refused if he has come into possession of sufficient funds ■\yith which to pay such debts and expenses, and has unlawfully or wrongfully expended the same or diverted it from its proper use so that such personal assets have been by him vested or lost through his fault. But, under such circumstances, resort may and doubtless should be had to the administrator and his bondsmen to recover the money so lost to the estate. But that rule is not applied with strictness except where the money has been distributed through the fault of the administrator, and not then, although the distribution may have been irregular, if not wrongful or fraudulent, but with the knowledge and consent of the heirs, devisees or other persons interested in the estate. And where such payment or distribution has been made by the procurement or with the knowledge and consent of any interested party, such party will not be heard to say that the distribution was wrongful, but will be estopped from so saying. In my opinion the doctrine of equitable estoppel as against the appellant herein' was properly applied by both trial courts, and that therefore, the judgment appealed from should be affirmed.
*563 That the doctrine of equitable estoppel may be applied in cases of this character is shown by numerous authorities, including our own appellate courts. — N. Y. Life Ins. Co. et al. v. Brown, Executor et al., 32 Colo. 365-379; Pershing et al. v. Wolfe et al., 6 Colo. App. 410-418; George B. Foster’s Executrix v. H. M. Stone, Adm. et al., 67 Vt. 366; Boerum v. Schenck, 41 N. Y. 182-190; Lyon v. Lyon, 8 Ired. Eq., 201-206; Haden v. Haden, 7 J. J. Marsh, 168; Grady v. Porter, 53 Cal. 680; Axton v. Carter, 141 Ind. 672-675; Young et al. v. Wittenmyre, 123 Ill. 303-309; 2 Woerner Adm., star pp. 679-1242.
In the case of the New York Life Insurance Company et al. v. Brown, executor, et al., supra, the court, after referring to section 4798 Mills’ Ann. Stat., which permits the court to direct the administrator to distribute the surplus remaining in his hands among the heirs of the deceased “after the payment of all debts allowed against the estate .of any decedent and the expenses of administration”, said:
“It is true that the executor of an estate can make no distribution until after the estate indebtedness is paid, but that does not prevent a devisee from disposing of his interest subject to the payment of estate indebtedness, and if he does make such disposition he is bound thereby, and cannot subsequently require that the interest which he has disposed of shall thereafter be subjected to the lien of estate indebtedness, so as to protect his interest in any of the property which he still retains. ’ ’
Applying that rule to the case at bar it will readily appear that, when in settlement of a large claim against the estate of which she was devisee, *564 appellant, Randolph relinquished to the heirs of Amy Kessee all her interest in the $9400 paid as a compromise of that claim and permitted its distribution to said heirs, she cannot now require that the interest which she so disposed of shall be subjected to the payment of estate indebtedness and costs of administration, so as to protect her interest in the real estate remaining, and in which she has a one-half interest subject to the payment of such debts.
In Pershing et al. v. Wolfe et al., supra, being an estate matter involving the rights .of a minor, in which the minor through her next friend alleged the invalidity of certain proceedings in the county court, and in which the doctrine of estoppel was invoked, the court, after saying that the proceedings under the original petition were regular but that the decree was open to grave criticism as giving the administratrix too great power, said:
“The nature of an estoppel .does not preclude its application wherever it tends to work out an apparent equity and to do justice between -the parties. The infancy or the disability of the party against whom the doctrine is invoked furnishes no obstacle to its operation. It has been applied in many cases where at the time of the occurrence the person who is to be bound by the act was then completely under some recognized disability. It has been applied in all classes of cases, but usually in those where money has been received from the sale of land or from some other source by one who was the custodian of the person under disability, and who applied the funds to the use and benefit of'the infant. Wherever this has been done, even though *565 .the procedure was irregular and void, the infant has been estopped to assert its illegality unless the pur-’ chaser can either he put in statu quo or the infant has made some offer of restitution which, if accepted, would leave the other unharmed.”
and the judgment of. the court below was reversed because that court refused to recognize and apply the doctrine of equitable estoppel as against the minor heir for whose benefit the money procured by the mortgage had been expended.
In the case at bar a claim of $46,000 against the estate of which appellant was sole beneficiary, was settled by the payment of $9400, upon the express condition that said sum should go to certain persons. This settlement was made for her benefit, and with her consent, and she has not offered to place said heirs in statu quo, and therefore, although the distribution made by the administrator may have been irregular, and void as to general creditors of the estate, appellant should be estopped from asserting such irregularities.
In the case of Young et al. v. Wittenmyre, supra, cited by counsel for appellant, the court recognized the proper application of the doctrine of estoppel, but refused to apply it for the reason only that the heirs were not instrumental in having the distribution made, knowing that an unpaid debt remained, and that the action of the administratrix in making such distribution was of her own free will and without being required either by the heirs or by the court, she voluntarily paid over money to the heirs which she ought to have retained for the payment of debts.
In the case at bar the evidence conclusively *566 shows that payment by the administrator was not voluntary; but that it was procured through the contract of compromise settlement made by appellant, directed by the court and actually distributed in the presence of appellant or her attorney in fact, in accordance with the terms of her agreement.
The other cases cited deal with the application of the doctrine of equitable estoppel as pertaining to estates and administration in many different phases, some of which go to the extent of holding that in case of a sale of real estate by an administrator to himself, although voidable at the election of the cestui que trust, yet the cestui que trust having received the proceeds of the sale, or any part thereof, with full knowledge of all the facts, thereby confirms and ratifies the sale, and cannot afterwards avoid it.
In Grady v. Porter, supra, involving the settlement of an executor’s account pursuant to stipulation, to which proceedings plaintiffs were parties, appearing and consenting, the court held that the probate court might entertain and enforce the stipulation as well as any other court in reference to a matter of which it had jurisdiction, and that the said plaintiffs were, by said stipulation and the proceedings of the probate court had thereon, estopped and 'concluded, notwithstanding the claim that the executor had in his possession money and other property of the estate which he had omitted from his inventory and account.
A charge of $564 (the usual maximum allowance of six per cent, fixed by law) was made by the administrator and allowed by the county court and the district court for the collection of the $9400 from *567 the estate of Daniel Kessee. Propriety of this charge is challenged, and has been the occasion of much discussion by counsel, and in this court. No other charge was made by the administrator. No objection was made or exceptions reserved in the lower courts to the allowance of that charge, and whether it was reasonable or permissible does not affect the question of the jurisdiction of the court to order the sale of the real estate, since, without regard to the allowance of that amount, there was still a deficiency of personal assets.
There seems to be slight if any occasion, and I have no disposition to challenge the decrees of Providence or the operation of the natural law, to which my brother who wrote the opinion of the court referred, because of the order in which Amy and Daniel departed this life, although it does appear that Daniel was neither unmindful nor neglectful of the opportunity thus afforded him to finish the task he had begun of appropriating to himself the patrimony of the children of his wife and forever alienating it from them, by making his will, devising everything to his collateral heir, the appellant herein. His purpose to defraud the estate of his wife is evidenced by his inventory disclosing only real estate of the estimated value of $3600, and omitting any mention of the item of $46,000 which he was charged with having received from the sale of his wife’s lands and cattle, and all of which, by his will, would have passed tó the appellant hut for the active interference by the administrator. Daniel’s demise gave Prowers a chance to save something from the wreck of his mother’s estate, the greater portion of which his stepfather seemed still to grasp in *568 mortmain, and I ana not willing to participate in a judgment which, will take any part of the 'sum paid to the Prowers children in settlement of said claim, in order to relieve the lands of the Amy Kessee estate, in which appellant retains an interest, from her proper share of the debts and expenses of administration.
Decided February 13, A. D. 1912.
Rehearing denied April 8, A. D. 1912.
I am authorized to state that Presiding Judge Scott agrees with my conclusion that the judgment should be affirmed.